IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-22689-CIV-KING

NORA BARNES,

    Plaintiff,

vs.

DIAMOND AIRCRAFT INDUSTRIES, INC.,

    Defendant.

_____/

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

THIS CAUSE is before the Court upon the Motion by Defendant Diamond Aircraft Industries, Inc., for Summary Judgment filed July 5, 2007 (D.E. #14). The Plaintiff Nora Barnes has not responded to Defendant's Motion and the time her response was due (July 19, 2007) has expired. All discovery in the case has been completed in accordance with the Scheduling Order of November 9, 2006 setting a discovery deadline of May 30, 2007. The case is presently set for Final Pretrial Conference on August 3, 2007 and Jury Trial on September 17, 2007. The United States District Court has jurisdiction over this removed action pursuant to 28 U.S.C. § 1332.

After careful consideration of the written submissions, written briefs and relevant case and statutory law, the Court grants defense motion for summary judgment, pursuant to Rule 56 Fed.R.Civ.P. and Local Rule 7.5, and enters Summary Judgment in favor of Defendant Diamond Aircraft Industries, Inc. in its favor on Counts I, II and III.

I. <u>**MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE**</u>

Plaintiff, Nora Barnes is a Virginia resident. Diamond Aircraft Industries, Inc. is a foreign corporation operating under the laws of Canada. (Amended Complaint, ¶¶ 2-3). On January 15, 2003, Diamond Aircraft announced that it would build a single-engine light jet aircraft, referred to as the "D-JET," noting that it would select a powerplant and other equipment for the plane in the future and identifying a "projected price" of under $1 million. In April 2003, Diamond Aircraft issued a press release in which it projected that the D-JET's first flight would be scheduled in 2004 with initial deliveries to customers in 2006. (Ex. A, attaching Press Release.) Subsequently, on or about December 4, 2004, Barnes signed the Reservation Agreement, which was attached as Exhibit A to Barnes's Amended Complaint. (Amended Complaint, ¶ 10.)

The language of the Reservation Agreement made clear that there was no existing aircraft to consider for purchase at the time the Reservation Agreement was executed. There were no specifications listed on the Reservation Agreement to define the aircraft other than that it would contain "IFR [instrument flight rules] avionics, including Auto pilot/HSI," a "glass cockpit," and a "premium interior." (*See* Reservation Agreement at 1.) Under "additional options," "exterior striping," and "interior options," the Reservation Agreement noted, "To Be Determined." (*Id.*) The Reservation Agreement also provided that "within thirty (30) days of JAA IFR certification (projected for second quarter of 2006), the standard 10% deposit was required to keep the order position

2

secured."[1] (*Id.*) The Reservation Agreement listed the "Manufacturer's Suggested" price of $850,000 in "2003 dollars." *(Id.)* As noted above, the Reservation Agreement expressly stated on its first page, "Price and specifications subject to change without notice." (*Id.*) On the second page of the Reservation Agreement, the parties each agreed to limit their liability to the return or forfeiture of the deposit in the event of breach. (*Id.* at 2, ¶¶ 5, 6.) Pursuant to the Reservation Agreement, Barnes paid a deposit of $20,000 to reserve a place in line to purchase a D-JET. (Amended Complaint, ¶¶ 26-27.) After receiving Barnes's deposit for $20,000, Diamond Aircraft assigned her the fifty-second North American delivery position. (*See* Exhibit B attached to Barnes's Amended Complaint.)

Later, Diamond Aircraft reconfigured the D-JET entirely, and announced the new configuration and the new pricing in July 2006. On August 31, 2006, Diamond Aircraft sent to Barnes and its other deposit holders a letter outlining the pricing and the changes to the aircraft (the "August Letter"). (The August 31 Letter is attached to Barnes's Amended Complaint as Exhibit C.) The August Letter explained that the D-JET had been reconfigured to add more cabin space for the pilot and passengers, which in turn necessitated, among other things, an engine with considerably more thrust and a fuel tank with nearly forty percent more capacity. (*See* August letter at 2-3.) Diamond Aircraft also selected a more sophisticated avionics system to control the aircraft and upgraded its

---

[1] "JAA" refers to the now-defunct organization that certified aircraft for flight in much of the European Union, roughly equivalent to the Federal Aviation Administration ("FAA"). The JAA has been replaced by EASA.

interior options. (*Id.*) The August Letter further explained that Barnes could maintain her delivery position for a D-JET priced at $1.38 million or recover her deposit of $20,000 and relinquish her delivery position. (*Id.* at 4.) The August Letter also stated that Diamond Aircraft intended to develop a lower cost version of the D-JET in the future, with different equipment and specifications. (*Id.* at 3.)

Barnes declined to enter into an agreement to secure her delivery position to purchase the aircraft at the firm price or recover her deposit. Instead, she filed suit against Diamond Aircraft on October 2, 2006, alleging breach of contract and seeking specific performance or money damages. (Amended Complaint, Counts I, II, and III.) Diamond Aircraft's Answer denied all liability.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." *Hickson Corp. v. Northern Crossarm Co., Inc.*, 357 F.3d 1256, 1259 (11th Cir. 2004). The substantive law applicable to the case determines which facts are material. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Alphin v. Sears, Roebuck & Co.*, 940 F.2d 1497, 1500 (11th Cir. 1991). Accordingly, "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. In rendering

a decision based on state substantive law, a federal court must "decide the case the way it appears the state's highest court would." *E.g., Royal Ins. Co. of Am. v. Whitaker Contracting Corp.*, 242 F.3d 1035, 1040 (11th Cir. 2001) (internal quotations and citation omitted).

"Where the determination of the issues of a lawsuit depends upon the construction of a written instrument and the legal effect to be drawn therefrom, the question at issue is essentially one of law only and determinable by entry of summary judgment." *Angell v. Don Jones Ins. Agency, Inc.*, 620 So. 2d 1012, 1014 (Fla. 2d DCA 1993); *see also Gray v. D & J Indus. Inc.*, 875 So. 2d 683, 683 (Fla. 3d DCA 2004) ("The construction of a contract is a question of law for the courts to determine where the language used in the written contract is clear, unambiguous, and susceptible to only one interpretation"). Where the language of a contract is unambiguous, the legal effect of that language is a question of law. *Orkin Exterminating Co., Inc. v. F.T.C.*, 849 F.2d 1354, 1360 (11th Cir. 1988) (observing that the question of whether a contractual ambiguity exists is also a question of law that "may be resolved summarily," and the fact that the meaning of a contract term is disputed need not reflect the existence of ambiguity).

## III. ANALYSIS

### A. COUNTS I AND II

In order to establish that Diamond Aircraft has breached the Reservation Agreement, Barnes must establish each of the following: (1) that the Reservation Agreement is sufficient for the purchase of a defined aircraft such that it reflected a true

meeting of the minds; (2) that Diamond Aircraft did not have the authority to alter the price and specifications of the aircraft, as expressly provided in the Reservation Agreement; and (3) that the limitations on liability contained in the Reservation Agreement are unenforceable.

### 1. The Reservation Agreement Does Not Reflect a Meeting of the Minds for the Purchase of an Aircraft.

Plaintiff's breach of contract claims are predicated on her theory that the Reservation Agreement established a meeting of the minds between herself and Diamond Aircraft for the purchase of a specific aircraft, rather than an agreement to reserve an order position for an aircraft to be defined later at a price that was subject to change pending the aircraft's development. As a matter of law, however, the Reservation Agreement did not constitute an agreement for the purchase of an aircraft because the essential terms of the agreement defining the aircraft to be purchased were not, and could not, be defined at the time the Reservation Agreement was executed.

Under Florida law, "[i]t is well established that a meeting of the minds of the parties on all essential elements is a prerequisite to the existence of an enforceable contract . . . ." *Greater New York Corp. v. Cenvill Miami Beach Corp.*, 620 So. 2d 1068, 1070 (Fla. 3d DCA 1993); *see also Innkeepers Int'l v. McCoy Motels, Ltd.*, 324 So. 2d 676, 678 (Fla. 4th DCA 1975) ("[A]s a general rule, [the] presence of blanks in a contract is fatal to the enforcement if the blanks occur in a provision dealing with an essential term of the contract."). Accordingly, "[s]o long as any essential matters remain open for

further consideration, there is no completed contract. In order to create a contract, it is essential that there be reciprocal assent to a certain and definite proposition ... [and] [f]ailure to sufficiently determine quality, quantity, or price may preclude the finding of an enforceable agreement." *Business Radio, Inc. v. Relm Wireless Corp.*, 373 F. Supp. 2d 1317, 1320 (M.D. Fla. 2005).

In *Business Radio*, the Court held that the plaintiff failed to prove the existence of a contract because two items alleged to constitute a purported contract – a purchase order and attendant letter – could not alone or in combination represent a "relevant contract" for several reasons. *Id.* at. 1320. The letter concerned a product that was not at the time available; it provided a very general product description and "[left] open every conceivable contractual term the parties could later negotiate"; it contemplated that the defendant could make a future order for a quantity of the anticipated upgrade product, which could be rejected; and the purchase order did not purport to list a per-unit price or quantity of the anticipated upgrade product. *Id.* The Court granted the defendant's motion to dismiss, holding that no agreement had been reached on essential terms and an enforceable contract could not exist. *Id.*

Plaintiff's claim for breach of contract must likewise fail because the Reservation Agreement can be understood only as one that established Barnes's position in line to purchase a plane if and when it became available. The term "D-JET," as specified in the Reservation Agreement, did not refer to an existing aircraft, but rather to a concept for which none of the engineering decisions and processes necessary to move from a concept

to an actual, flying aircraft had been made. The Reservation Agreement noted only that the aircraft would contain "IFR [instrument flight rules] avionics, including Auto pilot/HSI," a "glass cockpit," and a "premium interior." Critically, the Reservation Agreement expressly provided that additional options were "to be determined." (Reservation Agreement at 1.) While there were projected performance specifications for the aircraft, the Reservation Agreement expressly provided that specifications were subject to change without notice, and there is no other writing or understanding to define the aircraft to be sold.

Given the absence of definition of the plane to be purchased and sold, the Reservation Agreement can be understood only as one that established Barnes's position in line to purchase a plane if and when it became available. The projected price was placed on the Reservation Agreement as a placeholder, but it did not and could not bind the parties to the purchase and sale of an aircraft that did not yet exist. Barnes's breach of contract claim must therefore fail.

### 2. The Reservation Agreement Permitted Diamond Aircraft to Change the Price and Specifications Without Notice to Barnes.

Barnes's claim for breach of contract also fails because the Reservation Agreement expressly permitted Diamond Aircraft to change the price and specifications of the D-JET without notice. The Eleventh Circuit has ruled that, under Florida law, a party does not breach a contract when it changes prices pursuant to a contractual provision that provides authorization for such unilateral price changes. *Shukla v. BP Exploration & Oil, Inc.*, 115

F.3d 849 (11th Cir. 1997). In *Shukla*, the Court held that BP could not have breached an implied covenant of good faith because the agreement specifically provided that all BP products purchased by the plaintiff "shall be BP's price in effect at the time and place of delivery for franchise dealers," and that "prices for all products *shall be subject to change without notice* to Dealer." *Id.* at 853 (emphasis added). The Court specifically noted that the plaintiff's price increase allegations could not constitute a contractual burden because "BP was free to raise the price of gasoline" based on the express terms of its contract with the plaintiff. *Id.* The Eleventh Circuit emphasized, "Under his contract with BP, Shukla always faced the possibility that BP would raise its prices without notice, alter its price support system, or modify its credit card arrangements." *Id.* at 854.

Under Florida law, it is well settled that "when the terms of a voluntary contract are clear and unambiguous, . . . the contracting parties are bound by those terms, and a court is powerless to rewrite the contract to make it more reasonable or advantageous for one of the contracting parties." *Emergency Assocs. of Tampa, P.A. v. Sassano*, 664 So. 2d 1000, 1003 (Fla. 2d DCA 1995); *accord Institutional & Supermarket Equip., Inc. v. C & S Refrigeration, Inc.*, 609 So. 2d 66, 68 (Fla. 4th DCA 1992) ("Where words of a contract are clear and definite, they must be understood according to their ordinary meaning"). Additionally, where a contract is clear and unambiguous, the express contract terms may not be varied by resort to extrinsic evidence, such as evidence related to the

UCC obligation of good faith or custom and usage.[2] *See, e.g., Indian Harbor Citrus, Inc. v. Poppell,* 658 So. 2d 605, 606 (Fla. 4th DCA 1995) (noting good faith and course of dealing cannot override express contract terms). Thus, Florida law supports the obvious proposition that the terms of a contract control a court's interpretation.

Here, the Reservation Agreement explicitly and unambiguously provided that the "price and specifications [are] subject to change without notice." (Reservation Agreement at 1.) As in *Shukla*, Barnes always faced the possibility that Diamond Aircraft might change the price and/or specifications of the proposed D-JET. Diamond Aircraft did not breach the Reservation Agreement when it changed the price.

### 3. Plaintiff Waived and Released Her Claims Against Diamond Aircraft, Pursuant to the Limitation of Liability Provisions in the Reservation Agreement.

In addition to the controlling and unambiguous terms of the Reservation Agreement allowing Diamond Aircraft to change the price and specifications without notice, Barnes waived and released her claims against Diamond Aircraft, except for the return of her deposit for $20,000, pursuant to the terms of Paragraphs 5, 6, and 11 of the Reservation Agreement. The Reservation Agreement provides for the return of the buyer's deposit in the event that the seller, Diamond Aircraft, breaches the Reservation Agreement. Likewise, the Reservation Agreement permits Diamond Aircraft to retain a

---

[2] Florida's enactment of the Uniform Commercial Code ("UCC") applies to the Reservation Agreement between Diamond Aircraft and Barnes because the D-JET constitutes a "good" under the Code. The UCC defines "goods" as all things (including specially manufactured goods) that are movable at the time of identification to the contract for sale. F.S.A. § 627.105(1); UCC § 2-105. *See also McCollum Aviation, Inc. v. CIM Associates, Inc.,* 446 F. Supp. 511, 513 (S.D. Fla. 1978) (holding aircraft constituted a "good" under Florida Uniform Commercial Code).

10

buyer's deposit if the buyer is in breach.

>Specifically, the mutual limitation remedies provide in pertinent part:

>>Buyer's failure to take delivery of, and pay for, the Aircraft pursuant to the terms and conditions of this Agreement, shall constitute a material breach of this agreement. Upon such breach, all deposits shall be retained by Seller, not as a forfeiture, but as liquidated damages if this Agreement is breached, cancelled, or terminated by Buyer for any cause whatsoever ... [P]rovided, however, if Seller should fail to make delivery within one hundred eighty (180) days after the last day of the Confirmed Delivery Week, Buyer shall have the right to demand, in writing, the return of all deposits relating to any Aircraft which were not delivered within the Confirmed Delivery Week. Buyer agrees that that its sole remedy for any failure of Seller to perform any part of this Agreement is limited to the return of deposits as herein described.

(Reservation Agreement, ¶ 5.)

Florida courts have upheld such limitations of remedy provisions in contracts where the limitation is mutual, unequivocal, and reasonable. *See, e.g., Greenstein v. Greenbrook, Ltd.*, 413 So. 2d 842, 844 (Fla. 3rd DCA 1982) (finding remedy provision reasonable and enforcing the parties agreement that specific performance would not be available to either side as a remedy in the event of default); *Black v. Frank*, 176 So. 2d 113 (Fla. 1st DCA 1965) (upholding provision limiting relief available for breach of contract to the return of capital stock and finding that parties may stipulate by contract what the consequences of a breach shall be and such stipulation, if reasonable, is controlling and excludes other consequences).

Here, the limitation of liability clauses in the Terms and Conditions attached to Barnes's Order Form are mutual, unequivocal, and reasonable. By signing the Terms and

Conditions, Barnes agreed that Diamond Aircraft could retain her deposit in the event she breached the agreement, and similarly, if Diamond Aircraft breached, Barnes could demand the return of her deposit. This is Barnes's *sole* remedy under the express terms of the Reservation Agreement. Barnes waived and released all other claims against Diamond Aircraft. This bilateral limitation of liability provision affords both Diamond Aircraft and Barnes mutual remedies in the event of the other party's breach. The Court finds the limitation of liability provisions valid and binding, and conclude that Barnes's claim for breach of contract fails as a matter of law.

4. **Specific Performance**

Plaintiff's claim for specific performance fails for two additional reasons: (1) the D-JET is not a "unique" good, and (2) Barnes has an adequate remedy at law; the return of her deposit for $20,000.

To be subject to specific performance, the obligations of the parties with respect to the conditions of the contract and actions to be taken by the parties must be clear, definite, and certain. *de Vaux v. Westwood Baptist Church*, 953 So. 2d 677, 682 (Fla. 1st DCA 2007). Here, the specifications of the contract are not certain. There is no certainty regarding the specifications of the D-JET. There is no certainty as to the options, much less the pricing of those options. There is no time by which Diamond Aircraft must deliver the D-JET. In short, it would be impossible for this Court to order specific performance because this Court could only order Diamond Aircraft to deliver the shell of a jet. Barnes is not seeking such relief.

Second, Florida law recognizes the right to enforce specifically a contract only for the sale of real property or for such personal property that is of a unique character and value, such as an antique. *Clements v. Leonard,* 70 So. 2d 840, 842 (Fla. 1954); *Mangus v. Porter,* 276 So. 2d 250 (Fla. 3rd DCA 1973). Generally speaking, this right is not available for contracts involving personal property where the good is commonly manufactured. *See, e.g., DiabloSport, LLC v. Granatelli Motor Sports, Inc.*, No. 605CV312ORL31DAB, 2005 WL 2465019, at *2 (M.D. Fla. Oct. 6, 2005) (finding no specific performance where the plaintiff did not allege that "a commonly available manufactured good" was unique or that its value was difficult to calculate).

The Fourth Circuit has ruled that a private jet is not so "unique" as to warrant specific performance in a breach of contract action. *Klein v. PepsiCo, Inc.*, 845 F.2d 76, 80 (4th Cir. 1988). In *Klein*, the Fourth Circuit reversed the lower court's finding that an aircraft called the "G-II" was unique because similar planes existed in the market. The Court pointed to evidence in the record that the plaintiff made bids on two other G-II's after failing to consummate his deal with the defendant, and the only reason that the plaintiff did not purchase the aircraft was because "the prices had started to rise." *Id.* at 80. Consequently, the Court found "it very difficult to support a ruling that the aircraft was so unique as to merit an order of specific performance." *Id.* The Court also noted that "price increases alone are no reason to order specific performance" and "damages would clearly be adequate in this case . . . because the aircraft is not unique." *Id.*

Similarly, the D-JET is a "commonly available manufactured good" that does not

13

justify specific performance. Barnes has not alleged that the value of the D-JET would be difficult to calculate, and has not denied that other manufacturers are currently producing similar aircraft in the "very light jet" ("VLJ") category. As such, the injunctive remedy of specific performance does not apply to Barnes's claim.

### B.    COUNT III

In Count III of her Amended Complaint, Barnes claims that Diamond Aircraft violated the implied covenant of good faith and fair dealing in the Reservation Agreement because of Diamond Aircraft's "demand that the Plaintiff pay over 1.3 million dollars for an aircraft that the Defendant had agreed to sell for $850,000. . ." (Amended Complaint, ¶ 35.) As set forth above, Diamond Aircraft had the express right under the Reservation Agreement to change the price and specifications of the aircraft without notice for the reasons stated in Section B, and the undisputed evidence, including the August Letter, demonstrates that Diamond Aircraft set the firm price for its D-JET in good faith. A cause of action for breach of the implied covenant of good faith and fair dealing cannot be maintained in derogation of the express terms of the underlying contract or in the absence of breach of an express term of the underlying contract. *See Shibata v. Lim*, 133 F. Supp. 2d 1311, 1319 (M.D. Fla. 2000) (holding the express terms of the contract determined the parties' rights and no implied covenant of good faith gap-filler was needed to determine or protect the parties' expectations) (emphasis added). Accordingly, there can be no cause of action for a breach of the implied covenant of good faith "absent an allegation that an express term of the contract has been breached." *Insurance*

*Concepts and Design, Inc. v. Healthplan Srvcs., Inc.*, 785 So. 2d 1232, 1234 (Fla. 4th DCA 2001); *see also Avatar Development Corp. v. De Pani Construction, Inc.*, 834 So. 2d 873, 876 (Fla. 4th DCA 2002) ("[T]he covenant of good faith cannot be used to create a breach of contract on [one party's] part where there was no breach of any express term of the contract."). The implied covenant of good faith cannot apply to contradict the express terms of a contract.

As the Eleventh Circuit has held, "Although every contract implies good faith and fair dealing between the parties to it, the covenant of good faith and fair dealing is not an independent source of duties assumed by parties to a contract and a breach of the covenant itself does not by itself create a cause of action." *Rayle Tech, Inc. v. Dekalb Swine Breeders, Inc.*, 133 F.3d 1405 (11th Cir. 1998) (citations omitted). Likewise, the Official Comment to section 1-203 of the UCC disclaims any provision of an additional cause of action for failure to act in good faith. *See* UCC § 1-203, cmt. ("This section does not support an independent cause of action for failure to perform in good faith"). A plaintiff simply cannot take "two bites at the apple" by alleging breach of the implied covenant of good faith where no breach of an express term of a contract exists.

The undisputed evidence establishes that Diamond Aircraft set the firm price of the D-JET in good faith using commercially reasonable standards in accordance with the parties' expectations. Under the UCC, a party may unilaterally alter key terms in a contract if the party uses "good faith" in supplying the term based on "honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade." F.S.A. §

15

672.305; UCC § 2-103(1)(b). The Eleventh Circuit has recognized that under Florida law, the limit placed on a party's discretion in this respect "is not great." *See Ernie Haire Ford, Inc. v. Ford Motor Co.*, 260 F.3d 1285, 1291 (11th Cir. 2001) (affirming entry of summary judgment where an automobile manufacturer's unilateral disapproval of a proposed transfer and relocation of an automobile dealership was neither capricious nor in contravention of the parties' reasonable expectations). As a result, a party's decision will not violate the implied covenant of good faith and fair dealing "unless no reasonable party . . . would have made the same discretionary decision." *Id. (citing Sepe v. City of Safety Harbor*, 761 So. 2d 1182, 1185 (Fla. 2d DCA 2000). In *Sepe*, the court affirmed the trial court's grant of summary judgment where a contract gave the city sole discretion to pursue underpayments for utility services, and the city decided not to pursue underpayments of franchise fees and taxes, even though the plaintiff would have been entitled to a portion of the funds recovered. *Id.* Based on controlling law, Barnes must therefore demonstrate that "no reasonable party would have made the same discretionary decision" in setting the price of the D-JET. *Ernie Haire Ford*, 260 F.3d at 1291.

The Reservation Agreement between Barnes and Diamond Aircraft includes an express provision that allows Diamond Aircraft to change the price and specifications without notice to Barnes, and Diamond Aircraft exercised its discretion based on good faith and commercial reasonableness in accordance with the parties' reasonable expectations. (*See* August Letter.) As the Eleventh Circuit has held, a party's decision will not violate the implied covenant of good faith and fair dealing "unless <u>no</u> reasonable

16

party ... would have made the same discretionary decision." *Ernie Haire Ford, supra.* (emphasis added). This Court should therefore grant summary judgment on Count III of the Amended Complaint.

## IV. CONCLUSION

The record in this case and applicable law demonstrate that no genuine issue exists as to any material fact and that Diamond Aircraft is entitled to judgment as a matter of law. Therefore, it is

ORDERED, ADJUDGED and DECREED that Defendant's Motion for Summary Judgment be and the same is hereby GRANTED.

DONE AND ORDERED in chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida, this 25th day of July, 2007.

_____
JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE

Copies furnished to:

*Pro Se Plaintiff:*
Ms. Nora Barnes
613 Colonial Ave.
Norfolk, VA 23507

*Counsel for Defendant:*
J. Thompson Thornton, Esq.
THORNTON, DAVIS & FEIN, P.A.
Brickell BayView Centre, Suite 2900
80 S.W. 8th Street
Miami, Florida 33130-3036
Facsimile: 305-441-2374

Thomas J. Strueber, Esq.
McKenna Long & Aldridge LLP
303 Peachtree Street, Suite 5300
Atlanta, GA 30308
Facsimile: (404) 527-4198